IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**CONSTANCE LYNN JORDAN**                                                **PLAINTIFF**

**V.**                              **CIVIL ACTION NO. 1:19CV415 LRA**

**ANDREW SAUL, COMMISSIONER OF**
**SOCIAL SECURITY**                                                **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Constance Jordan appeals the final decision denying her application for a period of disability and disability insurance benefits (DIB). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the entire record, including the medical records in evidence, and all the applicable law, the Court finds that the decision should be affirmed.

On September 18, 2015, Plaintiff filed an application for DIB alleging a disability onset date of May 1, 2015, due to fibromyalgia, COPD, depression, anxiety, acid reflux, and hypothyroidism. She was 54 years on her alleged onset date and has a limited[1] education with past work experience as a cashier and home health aide. Following agency denials of her application, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that she had not established a disability within the meaning

---

[1] There are inconsistencies in the record concerning Plaintiff's level of education. At her consultative mental health evaluation and administrative hearing, she reported that she completed the sixth grade after repeating both the first and third grades. ECF No. 11, pp. 177, 275. However, medical records reflect that Plaintiff reported to her treatment providers that she had completed the tenth grade. ECF No. 11, p. 356.

of the Social Security Act.  The Appeals Council denied Plaintiff's request for review.  She now appeals that decision.

At step one of the five-step sequential evaluation,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  At steps two and three, the ALJ found that although Plaintiff's myalgia with possible lupus versus fibromyalgia, obesity, and major depressive disorder with alcohol use disorder were severe, they did not meet or medically equal any listing.  At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work except she is limited to performing only simple, routine tasks.  Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, she could perform her past work as a cashier.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the ALJ's decision; and (2) whether the decision comports with relevant legal standards.  *Salmond v. Berryhill*, 892 F.3d 812, 816 (5th Cir. 2018).  Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks

---

[2] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform?  *See also McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

and citation omitted). It must be more than a scintilla, but it need not be a preponderance. *Id.* In reviewing an appeal, this Court may not re-weigh the evidence, try the case de novo, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff testified at her administrative hearing that disabling mental and physical limitations prevent her from performing any work. Chronic pain prevents her from lifting over 10 pounds, sitting longer than 20-30 minutes, and stooping, kneeling or standing for long periods of time. Anxiety and depression also impair her ability to concentrate and interact with others, though medication helps to alleviate her symptoms when consistently taken. Her central argument on appeal alleges that the ALJ failed to properly evaluate the expert medical opinions resulting in an erroneous finding that she could perform her past work as a cashier. According to Plaintiff, this error, coupled with the ALJ's failure to consider her inability to afford treatment, warrants reversal or remand. The Commissioner counters that the proper standards were applied, and substantial evidence supports the ALJ's decision. Given the evidence in this case, the Court finds the ALJ's decision should be affirmed.

Social Security regulations divide medical experts into three general categories: (1) treating sources (primary care physicians); (2) non-treating examining sources (physicians who perform an examination of the claimant); and, (3) non-examining reviewing sources (physicians who review only the claimant's medical

record). *See generally* 20 C.F.R. § 404.1502. Generally, the opinion and diagnosis of a treating physician is assigned more weight than an examining or reviewing physician in determining disability. *Garcia v. Colvin*, 622 F. App'x 405, 410 (5th Cir. 2015); 40 C.F.R. § 404.1527.[3] However, no treating physician has offered a function-by-function assessment of Plaintiff's limitations in this case. In 2016, multiple reviewing and examining physicians from the Social Security Administration completed expert reports concerning Plaintiff's impairments and functional limitations. It is these reports that Plaintiff charges the ALJ failed to adequately consider.

In support, Plaintiff notes that the psychological consulting examiner, Dr. Michael Zakaras, observed that she was lethargic, poorly motivated, made poor eye contact, and "took a long time answering even the simplest questions" during her mental evaluation in 2016. She was also unable to spell "world" backwards; calculate how many nickels were in a dollar; and, perform the Serial Sevens Test. However, contrary to what Plaintiff suggests, Dr. Zakaras did not assign any functional limitations arising from these issues, nor did his observations end there. He also noted that Plaintiff exhibited good common sense, reasoning, and judgment with no apparent psychosis or thought disorder. Dr. Zakaras's impression was that Plaintiff had probable alcohol dependence with a secondary diagnosis of major depressive disorder. In his opinion, Plaintiff "could

---

[3] 20 C.F.R. § 404.1527 applies to claims filed before March 27, 2017. For claims filed on that date and thereafter, 20 C.F.R. § 404.1520(c) applies, and it provides, *inter alia*, that no specific evidentiary weight is to be given to medical opinions from medical sources.

benefit from psychotherapy," but he was that doubtful she would follow through given her failure to do so in the past.[4]

On appeal, Plaintiff contends that Dr. Zakaras's evaluation revealed disabling mental limitations, but it was not unreasonable for the ALJ to count his examination findings among the evidence establishing that she remained capable of performing simple, routine tasks. His relatively normal clinical findings were consistent with treating source evaluations and evidence showing Cymbalta—her only mental health treatment—effectively managed her depression. And, while Plaintiff alleges that the ALJ ignored her claims that she was unable to afford her medication, she does not address records obtained by the ALJ post-hearing showing her enrollment in her medical provider's Patient Assistance Program.[5] Nor does she claim to have been turned away by psychotherapists because she was indigent.

A claimant's failure to seek treatment is a relevant factor to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount complaints of disabling pain or other limitations. *See Doss v. Barnhart*, 137 F. App'x 689, 690 (5th Cir. 2005); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). But where there is no evidence of a disabling condition, a claimant's inability to afford treatment is irrelevant. *Fellows v. Apfel*, 211 F.3d 125 (5th Cir. 2000); *see also Sustaita v. Astrue*, No. EP-11-CV-00178-RFC, 2012 WL 3581163, at

---

[4] ECF No. 11, pp. 275-77.

[5] The record reflects that Plaintiff was enrolled in the GlaxoSmithKline Bridges to Access Patient Assistance Program. The medication obtained through the program was to be delivered to her home. ECF No. 11, p. 388.

5

*4 (W.D. Tex. Aug. 17, 2012). In addition to her enrollment in the Patient Assistance Program, the ALJ found Plaintiff's smoking and alcohol use were inconsistent with her allegations that she could not afford treatment. Apart from this evidence, however, the record did not establish that Plaintiff had disabling mental limitations without medication. The Court discerns nothing improper about the ALJ's assessment of Plaintiff's credibility or Dr. Zakaras's report. [6]

Plaintiff's contention that the ALJ failed to adequately consider the opinions of the reviewing mental health physicians is also unavailing. Upon reviewing the available evidence in 2016, agency physicians, Drs. Angela Herzog, and Carol Kossman, opined that Plaintiff had moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence and pace. Though the ALJ assigned these opinions some weight, she did not adopt them entirely. Longitudinal evidence, including evidence generated after their 2016 reports were issued, indicated that Plaintiff was only mildly limited in her abilities to maintain concentration, persistence and pace, and interact with others. It did not establish that Plaintiff had disabling mental limitations that would preclude her from performing simple, routine tasks. As Dr. Zakaras predicted, Plaintiff had not sought psychotherapy as recommended, and by her own admission, the medication prescribed by her treatment provider effectively treated her depression. Physical examinations from 2017-2018 also consistently revealed normal mental status findings. Plaintiff does not contest any of this evidence on appeal. While both

---

[6] ECF No. 11, pp. 30-34.

physicians opined that Plaintiff was moderately limited in certain areas, the ALJ was not bound by their assessments, so long as she explains the weight assigned. *Beck v. Barnhart*, 205 F. App'x 207, 213–14 (5th Cir. 2006); *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). An ALJ is free to reject any opinion, in whole or in part, "when the evidence supports a contrary conclusion." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (*superseded by statute on other grounds*). That is what occurred here.[7]

Lastly, Plaintiff argues that the ALJ's residual functional capacity determination fails to fully account for the clinical findings and physical limitations assigned by consulting examiner, Dr. Robert Cobb. Upon examination, Dr. Cobb observed that Plaintiff had some tenderness to palpitation in the upper and lower back muscles, proximal arms, and thighs, but no indication of muscle weakness or joint abnormalities. She had full range of motion in all extremities. His relevant diagnosis was "chronic bronchitis secondary to longstanding, heavy tobacco abuse, with normal spirometry on PFS"; "history of chronic myalgias[,] possible fibromyalgia[,] possibly secondary to depression"; and, "history of alcohol abuse." Aside from occasional postural and environmental limitations, Dr. Cobb opined that Plaintiff "was capable of doing all her normal activities without limitations from dyspnea." She could lift and carry 15-20 pounds occasionally, 10 pounds frequently, and be ambulatory for 5-6 hours of an 8-hour workday for 1-to-2 hours at a time, with no sitting limitation.[8]

---

[7] ECF No. 11, pp. 35, 100-15.

[8] ECF No. 11, pp. at 279-83.

As a consulting examiner, Dr. Cobb's opinion is "not accorded the controlling weight given to treating physicians." *Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008). However, the ALJ gave due consideration to those portions of his assessment that were supported by his examination findings and consistent with the record as a whole. *Garcia*, 622 F. App'x at 409. Ultimately, the ALJ explained that she assigned it partial weight because "[w]hile the claimant's myalgias/myositis with possible fibromyalgia or lupus support a finding she is limited to work of light exertional demand, greater limitation is inconsistent with the claimant's effective ambulation, normal extremities and non-focal neurological findings of intact motor strength in all four extremities."[9] Plaintiff does not dispute the ALJ's sound reasoning or good cause, nor does she direct the Court to any contrary evidence to support her claims. She simply maintains that her symptoms were disabling, and it was illogical to find that she could perform her past work as a cashier if she could "only stand 1 to 2 hours at a time" for "5 to 6 [hours] in an eight-hour workday)."[10]

However, it is the sole responsibility of the ALJ to interpret the medical evidence to determine a claimant's residual functional capacity for work, and Plaintiff does not explain how light work runs contrary to the exertional limitations that Dr. Cobb assigned or the vocational expert's testimony.[11] *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir.

---

[9] ECF No. 11, 33.

[10] ECF No. 12, p. 12.

[11] Light work, as defined by the regulations, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

2012). It is well-established that the value of a vocational expert's input is that "he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995). When presented with a hypothetical with Plaintiff's assessed residual functional capacity at the administrative hearing, the vocational expert testified that she could perform her past work as a cashier.

The mere fact that working may cause Plaintiff pain or discomfort does not mandate a finding of disability, particularly where substantial evidence indicates that she can work despite being in pain or discomfort, as it does here. *See Epps v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980); *Johnson v. Heckler*, 767 F.2d 180, 182 (5th Cir. 1985). Given the evidence, it was not unreasonable for the ALJ to conclude that if Plaintiff's "symptoms were as limiting as she would have them appear, she would be more compliant with measures to alleviate those symptoms." A medical condition that can be reasonably remedied by surgery, treatment or medication is not disabling. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). The ALJ's finding that Plaintiff could perform light work so long as she is limited to simple, routine tasks, is substantially supported by the opinion evidence, the objective medical evidence, and Plaintiff's own testimony.[12]

---

Further, a job constitutes light work when "it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

[12] ECF No. 11, p. 33.

## Conclusion

IT IS THEREFORE ORDERED AND ADJUDGED that Plaintiff's request that the decision of the Commissioner be reversed is denied, and her appeal is dismissed with prejudice. A Final Judgment in favor of the Commissioner shall be entered.

SO ORDERED on September 14, 2020.

s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE